[No. 232-40878-1.   Division One.   April 27, 1970.]
Panel 1

HANS M. BUSK, *Appellant*, v. LEW E. FLANDERS, *Respondent*.

*Malcolm S. McLeod,* for appellant.

*Lane, Powell, Moss & Miller* and *Gordon W. Moss,* for respondent.

SWANSON, J.—This case is an aftermath of the decision of the Washington State Supreme Court in *Busk v. Hoard,* 65 Wn.2d 126, 396 P.2d 171 (1964), and is an action against an attorney for damages caused by alleged malpractice. From a summary judgment of dismissal this appeal follows.

The progenitor of this case, *Busk v. Hoard, supra,* contains a detailed statement of the case's background, and only such facts as are necessary to an understanding of the questions raised in this appeal will be repeated.

The undisputed facts show that the appellant Hans M. Busk hired the respondent Lew E. Flanders[1] to bring suit against Hoard and wife to recover the balance due on a defaulted note and mortgage. Flanders brought the action, and the Hoards, in their answer filed August 2, 1961, interposed the defense of usury. Busk had made a loan to Hoard through Stevens-Norton, Inc., a Seattle mortgage brokerage firm. Unknown to Busk, Hoard had agreed to pay a 20 per cent commission to Stevens-Norton, Inc., on the $7,500 loan. The note given Busk carried a 10 per cent interest rate.[2]

On July 24, 1962, Busk's suit on Hoard's note and mortgage came on for trial in the superior court. Both Busk and Larry Stevens, vice president of Stevens-Norton, Inc., denied any agency between them. The trial judge found none and, likewise, no usury. Judgment entered for Busk dismissing Hoard's counterclaim and foreclosing the mortgage. Hoard appealed. On October 29, 1964, the Supreme Court filed its opinion in *Busk v. Hoard, supra,* and held that the note was usurious because Stevens-Norton, Inc., was an implied agent for Busk, so that the interest on the note combined with the commission charged by Stevens-Norton, Inc., made the note usurious. The penalty for usury was

[1] Respondents include Lew E. Flanders; Jane Doe Flanders, his wife; Flanders, Flanders & Trolson, a partnership; Robert L. Flanders; and Roy F. Trolson. However, Lew Flanders is referred to in this opinion as though he were the sole respondent.

[2] As the decision in *Busk v. Hoard, supra,* pointed out, the question principally was not one of usury, but whether Stevens-Norton, Inc., was Busk's agent, because if it was such an agent and if the commission constituted interest, the simple mathematics of the case made the note usurious.

applied, and the judgment in the lower court vacated. Thereafter, Flanders advised Busk that he might have a cause of action against Stevens-Norton, Inc., or its principals. On August 10, 1966, through his present counsel, Busk filed suit against the principals of Stevens-Norton, Inc. (the corporation had been dissolved in the meantime), claiming damages based on fraud. Stevens pleaded that Busk's notice of their alleged fraud arose upon the filing of the answer by Hoard on August 2, 1961, alleging usury, and that the 3-year statute of limitations barred the claim. A summary judgment dismissing the action was entered, and no appeal was taken from this judgment.

On August 28, 1967, the present suit was filed alleging that Flanders was the attorney for Stevens-Norton, Inc., during the time he represented Busk in *Busk v. Hoard, supra.* Busk further alleged in his complaint,

> That ordinary legal practice and dil[l]igence would require an attorney in such instances to bring suit against Larry Stevens, Earle Stevens and Stevens Norton Inc. [*sic*] or to inform plaintiff of the conflict of interest and withdraw from the case.

Busk claims the failure to do this constituted a breach of duty by Flanders and deprived him of his cause of action against Stevens-Norton, Inc. On the basis of the King County Clerk's file in *Busk v. Hoard,* King County cause No. 565424; the Supreme Court opinion in *Busk v. Hoard, supra;* and *Busk v. Stevens,* King County cause No. 663801, together with the pleadings in this cause, the interrogatories, admissions of fact, and the affidavit of Lew Flanders, the respondent moved for a summary judgment of dismissal. It was granted, and in the order the court recited:

> there is no genuine issue of *material* fact and defendants are entitled to summary judgment, because as a matter of law (1) defendants were not guilty of malpractice in failing to sue Stevens-Norton, Inc. or its principals (or advising plaintiff of the alleged conflict of interest and withdrawing from the case) which proximately caused the loss alleged in the complaint; and (2) plaintiff's claim

is barred by the three-year statute of limitations, R.C.W. 4.16.080, which the court concludes is applicable.

From this summary judgment, plaintiff appeals.

Appellant's first assignment of error challenges the court's conclusion that his claim is barred by the 3-year statute of limitations. It is his sole contention that there was a written contract and the 6-year statute should be applied, RCW 4.16.040(2)[3]. In making this argument, appellant Busk concedes that Flanders' initial representation of Busk was based on an oral agreement only. However, appellant argues that when the defendant Hoard, in *Busk v. Hoard, supra,* gave notice of appeal, Flanders wrote Busk a letter, dated December 28, 1962.[4] Appellant argues that this letter constitutes a unilateral offer to continue the lawyer-client relationship at a certain fee, and when the fee was paid, a binding contract arose.

This argument is without merit, for even assuming arguendo that an alleged liability arises out of the written agreement so that the 6-year statute of limitations, RCW 4.16.040(2), governs, as appellant contends, the claimed written agreement's source and basis is the December 28, 1962, letter. At most, the letter is an offer to represent Busk in resisting Hoard's appeal, but the suit is not for alleged malpractice in handling the appeal. Rather, it is for the failure to inform appellant of a conflict of interest, and withdraw, so if the letter forms the basis for the written agreement, it is not the agreement appellant claims was

---

[3]"Within six years:

". . .

"(2) An action upon a contract in writing, or liability express or implied arising out of a written agreement."

[4]"The attorney's fee to represent you in the Supreme Court will be the sum of $550.00, plus the cost of printing a brief which will be approximately $150.00.

"We cannot undertake this matter unless our fee to date in the sum of $300.95 has been paid and you have made a deposit with us in an additional sum of $700.00 to cover the expenses of appeal.

"May we suggest you call on the writer in our office at your earliest convenience to discuss this matter and an arrangement to handle the matter."

breached. Further, this claimed written agreement did not come into being until long after the alleged malpractice occurred.[5] If this action is based on the breach of a written contract arising out of the December 28, 1962, letter, as appellant contends, it contravenes the rule that the alleged breach must occur after the contract is made and not before. *Central Heat, Inc., v. Daily Olympian, Inc.*, 74 Wn.2d 126, 443 P.2d 544 (1968).

On the theory that liability for malpractice is not a liability express or implied arising out of a written agreement, the New York Court of Appeals, in *Glens Falls Ins. Co. v. Reynolds*, 3 App. Div. 2d 686, 159 N.Y.S.2d 95 (1957), held that the 6-year statute relating to written contracts would apply only if the agreement guaranteed a specific result or assured the effect of legal services. This case is in keeping with the holdings of our Supreme Court that not every liability related to a written contract is governed by the 6-year statute of limitations. *Bicknell v. Garrett*, 1 Wn.2d 564, 96 P.2d 592, 126 A.L.R. 258 (1939), and *Halver v. Welle*, 44 Wn.2d 288, 266 P.2d 1053 (1954). Neither party has cited a Washington case applying the 6-year statute to such actions. The Supreme Court of Washington has consistently applied the 3-year statute of limitations to malpractice cases. This rule was decisively announced in *Schirmer v. Nethercutt*, 157 Wash. 172, 179, 288 P. 265 (1930), when the court stated:

> In a very early case decided by this court, *Isham v. Parker*, 3 Wash. 755, 29 Pac. 835, a malpractice suit against an attorney, it was held that such actions are based on breach of contract. The cause of action is founded on the breach of duty, not on the consequential damage, and the subsequent accrual or ascertainment of such damage gives no new cause of action. 37 C.J. 863.

> It is a closed question in this state, for we have consistently held that such actions are based on breach of contract and controlled by the statute relating to the breach of a contractual relation, governed by the three-year stat-

---

[5] Appellant contends in his brief, page 10, that the duty to inform arose when the answer in *Busk v. Hoard, supra,* was filed; *i.e.,* August 2, 1961.

ute of limitations. *Cornell v. Edsen*, 78 Wash. 662, 139 Pac. 602, 51 L. R. A. (N. S.) 279; *Jones v. Gregory*, 125 Wash. 46, 215 Pac. 63; *Smith v. Berkey*, 134 Wash. 348, 235 Pac. 793.

■■ Regardless of whether the basis for the claimed malpractice is a breach of a contractual relationship so that the applicable statute of limitations is RCW 4.16.080(3)[6] as was determined by the trial court, or that the wrong complained of is negligence[7] so that the statute to be applied is RCW 4.16.080(2),[8] the cause of action is governed by a 3-year statute of limitations.

■■ Turning now to the question of when the statute of limitations begins to run, appellant's contention is set forth on page 10 of his brief, in this language:

The gist of the appellant's claim of malpractice is based upon the fact that the respondent failed to inform the appellant of his employment by one who might be liable to his client. This duty to inform became imperative when the answer in the Hoard case raised a defense which would compel a cross action against the respondent's other client.

It is therefore apparent that the alleged breach of duty occurred when the answer was filed on August 2, 1961, alleging usury in *Busk v. Hoard*, 65 Wn.2d 126, 396 P.2d 171 (1964). It was then, according to appellant's own contention, that respondent should have advised his client of the potential conflict of interest and withdrawn from the

---

[6] "An action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument;"

[7] See *Ward v. Arnold*, 52 Wn.2d 581, 328 P.2d 164 (1958). See also 63 Colum. L. Rev. 1292, n.5, which states:

Attorney malpractice suits have been characterized as being neither in contract nor in tort but as lying in a "borderland" area between the two. Prosser, *The Borderland of Tort and Contract*, in Selected Topics on the Law of Torts 380 (1954). See also Thornton, *The Elastic Concept of Tort and Contract as Applied by the Courts of New York*, 14 Brooklyn L. Rev. 196 (1948).

[8] "An action for taking, detaining, or injuring personal property, including an action for the specific recovery thereof, or for any other injury to the person or rights of another not hereinafter enumerated;"

case. Appellant then concedes that his cause of action for malpractice accrued on August 2, 1961, and it is on that date that the statute of limitations began to run. By necessary implication,[9] appellant agrees that the Washington Supreme Court follows the general rule in the United States that,

> in the absence of fraudulent concealment, where an attorney at law is guilty of negligence or breach of duty in performing services for his client, the client's cause of action accrues and the statute of limitations begins to run at the time when the negligence or breach of duty occurs, not at the time when it is discovered or actual damage results or is fully ascertained.

*Eckert v. Schaal,* 251 Cal. App. 2d 1, 58 Cal. Rptr. 817, 820 (1967); 54 C.J.S. *Limitations of Actions* § 135c (1948); 7 Am. Jur. 2d 154 *Attorneys at Law* § 186 (1963); *Sullivan v. Stout,* 120 N.J.L. 304, 199 A. 1, 118 A.L.R. 211 (1938); Annot., 18 A.L.R.3d 1005 § 8(b).[10]

In *Cornell v. Edsen,* 78 Wash. 662, 664, 139 P. 602 (1914), where an attorney was sued for allowing an action to be dismissed, the court said:

> The action is plainly one based upon a breach of duty growing out of the relation existing between the parties, a contractual relation which calls for a full disclosure; and when, by reason of the failure to make a full and complete disclosure, or the withholding or concealment of facts which should have been disclosed, loss is suffered, there is a breach of duty, and for such breach an action will lie. But like any other action founded upon a breach of duty imposed either by law or contract, the action arises out of the breach, and the statute of limitations begins to run from the time of the breach and not from the time of its discovery. . . . The relation, it is true, is fiduciary, but that does not disturb the fact that it

[9]Appellant did not argue in his brief, nor does he contend, that the cause of action accrued at the time of discovery, but concedes it accrued at the time of the alleged breach of duty.

[10]For cases indicating a trend away from measuring the period of the statute of limitations from the date of the alleged act of negligence, see *Downing v. Vaine,* 228 So. 2d 622 (Fla. 1969); *Wilson v. Econom,* 56 Misc. 2d 272, 288 N.Y.S.2d 381 (1968). See also 50 U.C.L.A. L. Rev. 230 (1967).

is contractual, and that *a cause of action based upon the breach of the contract accrues when the contract is violated and not when the violation is discovered.*

(Italics ours.)

Since the action was not commenced until October 28, 1967, more than 3 years after the cause of action accrued, appellant's claim was properly dismissed. We do not reach appellant's second and third assignments of error which challenge the court's conclusion that the respondent was not guilty of malpractice as a matter of law.

Judgment affirmed.

JAMES, C. J., and FARRIS, J., concur.

Petition for rehearing denied June 10, 1970.