[No. 18902-0-II.   Division Two.   January 3, 1997.]

VALERIE L. CRISMAN, *Appellant*, v. ROBERT E. CRISMAN, ET AL., *Respondents*.

16

*Robert W. Huffhines, Jr.*, for appellant.

*David C. Nordeen* and *Weber & Gunn*, for respondents.

SEINFELD, J. — Valerie Crisman contends that the trial court erred in relying upon the statute of limitations to dismiss her conversion claim against Robert Crisman and Richard Uhlich. She argues that the statute should not apply because she was unable to discover the factual basis for her allegations until eight years after the alleged tortious conduct. We agree and reverse.

## FACTS

Valerie Crisman opened a jewelry store in Long Beach, Washington, in the mid-1970s. She resided in New York City at that time so hired Robert Crisman (Robert), her twin brother, to manage the store. In turn, Robert hired Richard Uhlich as an employee and later as a store manager. Robert was also a minority shareholder in the business.

In 1982, Crisman purchased a second jewelry store at a local mall. Before renovating the new store, Robert and

Uhlich oversaw a liquidation sale of the newly purchased store's inventory.

In 1985, Robert and Uhlich offered to buy the business from Crisman for $175,000. Crisman counteroffered $400,000. The sale never materialized. Crisman, who had moved back to the Pacific Northwest, assumed hands-on supervision of the business. Shortly thereafter, Robert and Uhlich left the business and opened a competing jewelry store in the same mall.

When Crisman took over in 1985, she found the business in a precarious financial state, which she attributed to Robert and Uhlich's mismanagement. After viewing the situation, the company's attorney wrote a letter to its shareholders stating that "the corporation may have a negative book value and it is questionable whether or not the corporation has any actual market value." Crisman also discovered that Robert had taken financial records, display cases, customer lists, vendor lists, a company VISA card, and jewelry repair equipment from her store. Robert apparently returned these items after the company attorney sent him a letter threatening legal action. Ultimately, Crisman was able to save the business by closing one of the stores and lending the business large sums of money.

In 1990, Robert's estranged wife, Cathy Crisman, told Crisman that she had seen Robert burning receipt books sometime in 1982 and in 1985 and that he had stored in his closet at home a bag of gems that he claimed constituted his share of Crisman's business. In response, Crisman had a friend audit the business records from the 1982 liquidation sale. The audit uncovered a $100,000 shortage.

In 1992, Crisman filed this action. To overcome the three-year statute of limitations for conversion, she pleaded the discovery rule, claiming that she first learned the factual basis of her cause of action in 1990 when Cathy told her about the gems and the destruction of the receipts. The trial court submitted the question of when Crisman knew or should have known the facts underlying her claim

to the jury; the jury found that Crisman's claim was timely. But the trial court then granted the defense motion for judgment as a matter of law, vacated the verdict, and denied Crisman's motion for reconsideration.

Crisman contends that the trial court erred when it ruled, as a matter of law, that the discovery rule was inapplicable to the facts and, therefore, that the statutory period had expired before she filed her complaint. She also seeks recovery of attorney fees and costs on appeal.

## DISCUSSION

■ A trial court may issue a judgment as a matter of law when it finds, after viewing the evidence in the light most favorable to the nonmoving party, that there was no legally sufficient evidence or reasonable inference to support the jury's verdict in favor of the nonmoving party. CR 50; *Goodman v. Goodman*, 128 Wn.2d 366, 371, 907 P.2d 290 (1995). An appellate court applies the same standard of review as the trial court when it reviews the grant of a judgment as a matter of law. *Industrial Indem. Co. of the Northwest, Inc. v. Kallevig*, 114 Wn.2d 907, 915, 792 P.2d 520, 7 A.L.R.5th 1014 (1990).

■ Conversion claims are subject to a three-year statute of limitations. RCW 4.16.080(2).[1] The purpose of statutes of limitations is to shield defendants and the judicial system from stale claims. *Douchette v. Bethel Sch. Dist. No. 403*, 117 Wn.2d 805, 813, 818 P.2d 1362 (1991). When plaintiffs sleep on their rights, evidence may be lost and witnesses' memories may fade. *Douchette*, 117 Wn.2d at 813.

---

[1]RCW 4.16.080 provides in relevant part:

"The following actions shall be commenced within three years:

. . . .

"(2) An action for taking, detaining, or injuring personal property, including an action for the specific recovery thereof, or for any other injury to the person or rights of another not hereinafter enumerated[.]"

# I

## THE DISCOVERY RULE

■ The pivotal question in this case is whether the discovery rule tolled the running of the statute of limitations. The limitation period begins to run when the plaintiff's cause of action accrues. *Malnar v. Carlson*, 128 Wn.2d 521, 529, 910 P.2d 455 (1996); RCW 4.16.005. Generally, this occurs when the plaintiff suffers some form of injury or damage. *In re Estates of Hibbard*, 118 Wn.2d 737, 744, 826 P.2d 690 (1992).

In some instances, however, there is a delay between the injury and the plaintiff's discovery of it. *Allen v. State*, 118 Wn.2d 753, 758, 826 P.2d 200 (1992). If the delay was not caused by the plaintiff sleeping on his rights, the court may apply the discovery rule. The discovery rule operates to toll the date of accrual until the plaintiff knows or, through the exercise of due diligence, should have known all the facts necessary to establish a legal claim. *Allen*, 118 Wn.2d at 758. This rule is a court doctrine designed to balance the policies underlying statutes of limitations against the unfairness of cutting off a valid claim where the plaintiff, due to no fault of her own, could not reasonably have discovered the claim's factual elements until some time after the date of the injury. *Gazija v. Nicholas Jerns Co.*, 86 Wn.2d 215, 220-21, 543 P.2d 338 (1975); *Denny's Restaurants, Inc. v. Security Union Title Ins. Co.*, 71 Wn. App. 194, 215-16, 859 P.2d 619 (1993).

■ Courts apply the discovery rule to two categories of cases. Traditionally, the rule has been applied in cases where the defendant fraudulently conceals a material fact from the plaintiff and thereby deprives the plaintiff of the knowledge of accrual of the cause of action. Application of the discovery rule tolls the limitation period until such time as the plaintiff knew or, through the exercise of due diligence, should have known of the fraud. *Interlake Porsche & Audi, Inc. v. Bucholz*, 45 Wn. App. 502, 516-17, 728 P.2d 597 (1986), *review denied*, 107 Wn.2d 1022 (1987).

The Legislature has memorialized this rule in the statute governing the limitation period for fraud. RCW 4.16.080(4).[2]

The second category of cases does not depend upon evidence of fraudulent concealment. Rather, courts apply the doctrine where the nature of the plaintiff's injury makes it extremely difficult, if not impossible, for the plaintiff to learn the factual elements of the cause of action within the specified limitation period. Accordingly, Washington courts have extended the application of the discovery rule to a variety of tort actions including: professional malpractice actions,[3] product liability actions,[4] the failure to comply with mandatory self-reporting environmental law,[5] and libel suits against ex-employer.[6] We need not decide whether the rule should also be applied to conversion actions because this case falls within the first category.

There are two ways to establish fraudulent concealment or misrepresentation. The plaintiff may affirmatively plead and prove the nine elements of fraud or may simply show that the defendant breached an affirmative duty to disclose a material fact. *Stiley v. Block*, 130 Wn.2d 486, 515-16, 925 P.2d 194 (1996) (Talmadge, J., concurring); *Oates v. Taylor*, 31 Wn.2d 898, 902-03, 199 P.2d 924 (1948). Either method of proof will activate the statutory discovery rule for fraud, RCW 4.16.080(4). *Viewcrest Co-op Ass'n*

---

[2]RCW 4.16.080 provides in relevant part:
"The following actions shall be commenced within three years:
". . . .
"(4) An action for relief upon the ground of fraud, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud[.]"

[3]*Peters v. Simmons*, 87 Wn.2d 400, 552 P.2d 1053 (1976) (legal malpractice); *Ruth v. Dight*, 75 Wn.2d 660, 453 P.2d 631 (1969) (medical malpractice); *Hunter v. Knight, Vale & Gregory*, 18 Wn. App. 640, 571 P.2d 212 (1977) (accountant malpractice), *review denied*, 89 Wn.2d 1021 (1978).

[4]*Sahlie v. Johns-Manville Sales Corp.*, 99 Wn.2d 550, 663 P.2d 473 (1983).

[5]*U.S. Oil & Refining Co. v. Department of Ecology*, 96 Wn.2d 85, 633 P.2d 1329 (1981);

[6]*Kittinger v. Boeing Co.*, 21 Wn. App. 484, 585 P.2d 812 (1978).

*v. Deer*, 70 Wn.2d 290, 295, 422 P.2d 832 (1967). In the present case, Crisman did not plead the nine elements of a traditional fraud action. Her evidence, however, was sufficient to prove that Uhlich and Robert owed her an affirmative duty of candor and breached that duty.

■ Absent an affirmative duty to disclose material facts, a defendant's silence does not constitute fraudulent concealment or misrepresentation. *Favors v. Matzke*, 53 Wn. App. 789, 796, 770 P.2d 686, *review denied*, 113 Wn.2d 1033 (1989). When a duty to disclose does exist, however, the suppression of a material fact is tantamount to an affirmative misrepresentation. *Washington Mut. Sav. Bank v. Hedreen*, 125 Wn.2d 521, 526, 886 P.2d 1121 (1994); *Oates*, 31 Wn.2d at 902.

■ A fiduciary relationship arises between an agent and a principal when the agent, without the knowledge and consent of the principal, exercises dominion and control over the principal's property sufficient to alienate the principal's right to the property. *Moon v. Phipps*, 67 Wn.2d 948, 955-56, 411 P.2d 157 (1966). Once a fiduciary relationship arises, the agent has a duty to act in the utmost good faith, to fully disclose all facts relating to his interest in and his actions involving the affected property, and to deliver all benefits derived from or inuring to the property from the breach to the principal. *Moon*, 67 Wn.2d at 956.

■ In this instance, Uhlich and Robert, acting as Crisman's agents, transferred corporate funds they received from the liquidation sale to their own benefit without Crisman's knowledge or consent. They were acting as Crisman's fiduciaries and, consequently, owed her an affirmative duty of disclosure. As Uhlich and Robert did not disclose their actions to Crisman, they breached this duty, and their silence constitutes an affirmative act of misrepresentation. Consequently, RCW 4.16.080(4), the statutory

discovery rule for fraud, applies. The trial court erred as a matter of law when it held otherwise.

## II

### SUFFICIENT EVIDENCE

■■ Having established that RCW 4.16.080(4) applies, we turn to the issue of whether there was substantial evidence to support the jury's determination regarding the timeliness of Crisman's action. The determination of when the plaintiff discovered or through the exercise of due diligence should have discovered the factual basis for a cause of action is a factual question for the jury. *Samuelson v. Community College Dist. No. 2*, 75 Wn. App. 340, 346, 877 P.2d 734 (1994), *review denied*, 125 Wn.2d 1023 (1995). A court may overturn a jury's verdict only if, viewing the evidence in the light most favorable to the nonmoving party, there is no evidence or reasonable inference therefrom supporting the jury's ruling.

In the present case, the sole factual dispute presented to the jury was at what point Crisman discovered or should have discovered the factual elements of her conversion claim. The defendants argued that Crisman should have known about the theft in 1985 when she assumed control of the business and found it in a precarious financial state. Crisman contends that the three-year limitation period began to run in 1990 when Robert's estranged wife confided to her that Robert had destroyed financial records and had secreted jewelry. Reviewing the evidence in the light most favorable to the nonmoving party, we find that there is ample support for the jury's determination that Crisman's claim was timely. Therefore, we reverse the trial court's judgment as a matter of law and reinstate the jury's verdict.

## III

### ATTORNEY FEES

■ As the prevailing party, Crisman alleges that the

defendants' defense on appeal was frivolous and seeks attorney fees and costs under RCW 4.84.185.[7] We find that the defendants have presented a meritorious defense containing debatable issues upon which reasonable minds may differ. Each party will be responsible for their respective costs and fees on appeal.

We reverse and remand for further proceedings consistent with this ruling.

HOUGHTON, C.J., and MORGAN, J., concur.

After modification, further reconsideration denied February 14, 1997.

Review denied at 132 Wn.2d 1008 (1997).

---

[7]RCW 4.84.185 provides:

"In any civil action, the court having jurisdiction may, upon written findings by the judge that the action, counterclaim, cross-claim, third party claim, or defense was frivolous and advanced without reasonable cause, require the non-prevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action, counterclaim, cross-claim, third party claim, or defense. This determination shall be made upon motion by the prevailing party after a voluntary or involuntary order of dismissal, order on summary judgment, final judgment after trial, or other final order terminating the action as to the prevailing party. The judge shall consider all evidence presented at the time of the motion to determine whether the position of the nonprevailing party was frivolous and advanced without reasonable cause. In no event may such motion be filed more than thirty days after entry of the order."